We are accordingly of the opinion that the said shares of stock, transferred by Mr. Graves, the decedent, to his wife in his lifetime, are not subject to the transfer tax.

Second. The other item appealed from in said order and determination is on that portion of the order assessing a tax at the rate of 1 per cent. upon the sum of $1,485.25 on deposit in the Flour City National Bank of Rochester at the date of decedent's death, standing in the joint names of Lorenzo S. Graves and Eliza G. Graves, in which account it appeared that either or the survivor might draw. It appears from the evidence that originally this account was opened by the decedent, and the amount on deposit at the time the account was made joint (and an either or survivor account) was made up entirely of moneys belonging to the decedent. Subsequently this money was disbursed in the payment of household expenses, and the amount on deposit at the date of decedent's death was made up entirely of unexpended balances of moneys deposited subsequent to the making of said account a joint account, deposited by Mrs. Graves, that were received by her as dividends on the Otis Elevator stock, subsequent to the time of the gift of the Elevator stock to her.

It is unnecessary in this case to go into a discussion of the relative rights of the deceased and Mrs. Graves in this account. If the money was hers and her husband had no interest in it except to draw with her permission, it would not be taxable. If it was a joint account of husband and wife, whereby either had the absolute right to draw without consulting the other, with right of survivorship in the one surviving, then the case would fall under the decision recently made by this court in the Matter of the Transfer Tax upon the Estate of Julia A. Stebbins, Deceased, 103 N. Y. Supp. 563. Whichever contingency is adopted, the balance in said Flour City Bank account is not taxable.

Accordingly, let an order be entered herein modifying the order of the surrogate determining and assessing the tax heretofore entered herein, by striking out the item taxing the stock transferred by the decedent to Mrs. Graves, and also striking out the tax on the joint account deposited in the Flour City National Bank.

Ordered modified.

---

(52 Misc. Rep. 429)

## In re NORTH.

## In re KENNY'S WILL.

(Surrogate's Court, Genesee County. January, 1907.)

CHARITIES—BEQUESTS—CERTAINTY AS TO BENEFICIARIES.

Testatrix gave certain money to a benevolent organization by a name descriptive of its objects, stating: "By whatever name said society may be known." There was more than one society devoted to such objects. *Held*, that evidence was admissible as to the names by which such societies had been known, and as to the knowledge that testatrix had in relation to them, and as to any gift she might have previously made, and any declarations by her in order to determine which society was intended.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 64.]

In the matter of the settlement of the accounts of Safford E. North, executor of Adelaide Richmond Kenny, deceased. Decree rendered.

Charles McLouth and Frank S. Wood, for Christmas Fund.

Bayard J. Stedman and Myron H. Peck, for General Clergy Relief Fund.

WASHBURN, S.   The testatrix was a resident of the village of Batavia, in the diocese of Western New York, for many years immediately preceding her death.   By her will she gave to the Protestant Episcopal Church of the village of Batavia the very large legacy for its church purposes of the sum of $100,000.   She also gave legacies to all or nearly all af the other churches in the village and many other institutions, religious or semireligious in character.   By the nineteenth clause of her will she has given the sum of $5,000 to "the Society for Disabled Protestant Episcopal Clergymen, by whatever name said society may be known."   There is no corporation in existence in its title precisely answering the description given in the will.   One of the claimants was incorporated by chapter 127, p. 164, of the Laws of 1882 of this state, under the title of the "Christmas Fund of the Protestant Episcopal Church in the Diocese of Western New York."   By section 4 (page 165) of this act this corporation is entitled to receive and hold property by deed, conveyance or last will and testament; and section 5 provides that:

"All property, or choses in action, so received shall constitute a fund for the relief of disabled clergymen, and the widows and children of deceased clergymen of the said diocese."

The other claimant was incorporated under the laws of this state by chapter 459, p. 828, of the Laws of 1855; its corporate title being the "Trustees of the Fund for the Relief of Widows and Orphans of Deceased Clergymen, and of Aged, Infirm and Disabled Clergymen of the Protestant Episcopal Church in the United States of America," and its purpose as expressed in the act is the organizing, managing, and applying the fund indicated in its title.   Having acquired this knowledge of the names of these two corporation claimants and of their general character and purposes as declared by the laws of their creation, there seems to be a difficulty in determining which of the two was in the mind of the testatrix justifying the admission of extrinsic evidence.   St. Luke's Home v. Association for Indigent Females, 52 N. Y. 191, 11 Am. Rep. 697; Union Trust Company v. St. Luke's Hospital, 74 App. Div. 330, 77 N. Y. Supp. 528.   Additional evidence as to the general character and purposes of these corporations has accordingly been given, as well as evidence of the names by which each has customarily been known and the knowledge which the testatrix had of them and her acts and statements in connection therewith.

The Christmas Fund appears to be local in its object, being intended to relieve clergymen of this faith, as well as their widows and families, within the diocese of Western New York, including, however, cases of clergymen who have formerly served within that diocese, and their families, notwithstanding subsequent service elsewhere and absence from the diocese at the time of receiving relief.   It derived its name from the taking of offerings for its purpose on Christmas Day.   Since its incorporation it has been called, among other names, "Christmas Fund," "Christmas Fund for the Relief of Disabled Clergymen,"

"Fund for the Relief of Disabled Clergymen," "Fund for the Relief of Disabled Clergymen and Widows and Orphans of Deceased Clergymen," and "Fund for Infirm Clergymen," and more generally as the "Fund for Disabled Clergymen, Disabled and Infirm Clergymen, and Widows and Orphans of Clergymen." The second claimant, more commonly known as the "General Clergy Relief Fund," does its work in the whole of the United States of America, including the diocese of Western New York, as well as all other parts of the country; its field being a broader one, but its purposes little if any different from that of the Christmas Fund. The testatrix evidently feared that the name of the object of her bounty was not correctly set forth in the will, for she caused to be added the significant words "by whatever name said society may be known." The evidence shows that for a number of years she contributed something like $10 a year to the Christmas Fund, and the witness, Mrs. Jane Burkhart, testifies that Mrs. Kenny told her of contributing to the "disabled clergymen fund" and how interested she was in giving to this fund "because the clergymen in her diocese were not in her mind sufficiently paid and as they got older they needed help, and it was a great pleasure to her to contribute for them." It appears from the later testimony of this witness that, in referring to the disabled clergymen fund, Mrs. Kenny had in mind her annual gifts to the Christmas Fund. Mrs. Burkhart also testifies that in speaking of this society Mrs. Kenny told her that she was in the habit of making these yearly contributions for different charities and that "she hoped to make such a provision that after she was gone they would still receive a benefit when she could not make the yearly provision." It does not appear that Mrs. Kenny had ever contributed to the General Clergy Relief Fund. The only evidence justifying even an inference that she knew of the existence of such a fund or the corporation controlling it is found in the testimony of her former rector, the Reverend Addison M. Sherman, who states that she was well posted in church work, and was in the habit of reading several church publications in which the work of this charity was referred to and advertised under the name of the "General Clergy Relief Fund," and that, "by remarks she would make, she seemed to know of the existence" of both the diocesan society and the general society. An examination of the evidence, in connection with the will and the charters of these corporations, has satisfied me that in making this legacy she intended it for the society having in charge the work of relieving clergymen now and formerly resident in the diocese of Western New York and their families and having the legal title of "The Christmas Fund of the Protestant Episcopal Church in the Diocese of Western New York," and findings and a decree to that effect may be prepared, with costs to the successful claimant payable out of the estate.

Decreed accordingly.